[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15866
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-81187-CV-DTKH

EASTPOINTE CONDOMINIUM I ASSOCIATION, INC.,

Plaintiff-Appellant,

versus

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 20, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Eastpointe Condominium I Association, Inc. ("Eastpointe") appeals the

district court's entry of summary judgment in favor of Travelers Casualty & Surety

Company of America ("Travelers") on Eastpointe's claims for breach of contract and declaratory judgment. Eastpointe contends that the district court erred in concluding that an insurance policy exclusion relieved Travelers of its duty to defend Eastpointe in a lawsuit brought by a condominium unit owner. Following a brief recitation of the relevant facts, we affirm.

**I.**

Eastpointe is a Florida corporation that owns and operates a condominium building in Singer Island, Florida. One of the condominium unit owners, Lynn Bursten, sued Eastpointe for failing to adequately maintain and repair the roof and air conditioning system of the condominium building before, between, and after two hurricanes hit south Florida in October 2004. The condominium building sustained severe water intrusion, which allegedly caused pervasive mold and other damage to Bursten's unit. Bursten brought claims for negligence, breach of fiduciary duty, and breach of contract.

During the times relevant to this appeal, Eastpointe had insurance liability coverage under two different policies: a commercial general liability policy from QBE Insurance Corporation ("QBE"), and a non-profit management and organization liability policy, or directors and officers ("D&O") policy from Travelers. The D&O policy contained a "property damage" exclusion, which

2

excluded coverage for loss in connection with any claim made "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property including . . . mold, toxic mold, spores, mildew, fungus, or wet or dry rot."

Eastpointe tendered notice of the Bursten complaint to both QBE and Travelers. QBE, accepting defense of the Bursten suit under a reservation of rights, designated and paid for defense counsel. Travelers, however, denied coverage and disclaimed any duty to defend pursuant to the property damage exclusion. Eastpointe then hired its own lawyer to defend its interests in the Bursten lawsuit. The Bursten suit proceeded to trial, where Eastpointe—jointly represented by QBE's designated counsel and its own personal counsel—obtained a defense verdict on all counts.

Eastpointe then filed this declaratory judgment and breach of contract action, seeking to establish Travelers's duty to defend under the D&O policy and to recover attorney's fees paid in the underlying Bursten suit. After considering the parties' cross-motions for summary judgment and hearing oral argument, the district court entered summary judgment in Travelers's favor. Because the sole basis for Bursten's lawsuit was water damage to the condominium property that resulted in leaking, mold, and loss of use of the owner's unit, the district court determined that the underlying claim arose out of damage or destruction to tangible

property.  The district court therefore concluded that the property damage exclusion applied and that Travelers had no duty to defend Eastpointe.  This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*.  Rine v. Imagitas, Inc., 590 F.3d 1215, 1222 (11th Cir. 2009).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986).  We likewise review the district court's determination of coverage under an insurance policy *de novo*.  Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1003 (11th Cir. 2001).  Because our subject matter jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332, "Florida law governs the determination of the issues on this appeal."  State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004).

In interpreting insurance contracts, the Florida Supreme Court has made clear that "the language of the policy is the most important factor."  Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 537 (Fla. 2005).  "Under Florida law, insurance contracts are construed according to their plain meaning,"

4

and any ambiguities must be construed in favor of the insured. Id. at 532. Policy provisions are ambiguous if "susceptible to more than one reasonable interpretation, one providing coverage and the [ ]other limiting coverage." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).

Eastpointe presents three main arguments on appeal: (1) that the origin of the claims in this case is a breach of fiduciary duty, so the fact that the breach resulted in property damage does not trigger the property damage exclusion; (2) that the policy language is ambiguous, as demonstrated by the fact that two district judges have reached different interpretations of the same policy language, and therefore must be construed against Travelers; and (3) that any wrongful acts committed by Eastpointe necessarily relate to property, so enforcing the property damage exclusion would render the policy illusory. We address each of these arguments in turn.

First, we are not persuaded by Eastpointe's attempt to differentiate between losses originating from property damage, and losses originating from breaches of fiduciary duty that ultimately result in property damage. The plain language of the D&O policy excludes coverage for any claim made "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property." According to the Florida Supreme Court, the phrase "arising out of" should be

5

interpreted broadly and encompasses all of the following meanings: "originating from, having its origin in, growing out of, flowing from, incident to, or having a connection with." Taurus Holdings, 913 So. 2d at 539 (internal quotation marks omitted).

Eastpointe's putative breach of fiduciary duty plainly "ha[d] a connection with" the property damage alleged in Bursten's complaint. Id. The premise of Bursten's breach of fiduciary duty claim was that Eastpointe failed in its duty to properly maintain, repair, and replace the building's roof and air conditioning units, and that, as a result, water infiltrated the building and caused extensive damage to Bursten's unit. Bursten's claim thus depended upon the existence of the property damage. See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (no insurance coverage under pollution exclusion containing "arising out of" language, because "[a]lthough the alleged conduct was negligence in performing the site assessment, Priority's claim depends upon the existence of the environmental contamination"). In light of the broad interpretation given to the phrase "arising out of," we agree with the district court that the property damage exclusion applies to Bursten's breach of fiduciary duty claim.

Second, we are not convinced that the policy language is ambiguous. While

6

it is true that ambiguous policy provisions are interpreted strictly against the insurer and ambiguous policy exclusions are construed even more strictly, these rules apply "'[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.'" State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986) (alteration in original) (quoting Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979)).

Eastpointe directs our attention to Lumbermens Mutual Casualty Co. v. Dadeland Cove Section One Homeowners' Ass'n (Lumbermens I), No. 06-22222-CIV, 2007 WL 2979828 (S.D. Fla. Oct. 11, 2007), in which a judge in the Southern District of Florida interpreted a property damage exclusion similar to the exclusion we consider here. That district judge found that the property damage exclusion did not apply to breach of fiduciary duty claims brought against a condominium homeowners' association after the association purportedly allowed the common areas to deteriorate. Relying on Lumbermens I, Eastpointe argues that the property damage exclusion must be ambiguous because the Lumbermens I court came to the opposite conclusion as the district judge in this case. However, the fact that different judges have reached different interpretations of similar policy language does not necessarily mean that the language is ambiguous. See, e.g.,

7

Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1137–38 (Fla. 1998) (finding an exclusion unambiguous even though courts in other jurisdictions had found the same clause ambiguous); Indian Harbor Ins. Co. v. Williams, 998 So. 2d 677, 678–79 (Fla. 4th DCA 2009) (finding an exclusion unambiguous even though one trial judge had ruled that the insured was not entitled to coverage and another trial judge had reached the opposite conclusion).

Neither does the fact that the Lumbermens case was affirmed on appeal alter our analysis. We affirmed in an unpublished opinion. See Lumbermens Mut. Cas. Co. v. Dadeland Cove Section One Homeowners Ass'n (Lumbermens II), 295 F. App'x 361 (11th Cir. 2008). Unpublished opinions are not controlling authority and are "persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co., 480 F.3d 1254, 1260 n.3 (11th Cir. 2007). The one-sentence legal analysis in Lumbermens II provides little guidance here. See Lumbermens II, 295 F. App'x at 362 ("We find no error in the court's application of the law in its March 27 order."). It is also worth noting that Lumbermens appealed from the denial of its motion for relief under Federal Rule of Civil Procedure 60(b), so the court's consideration was governed by a different standard than the summary judgment we affirm today. See Nisson v.

8

<u>Lundy</u>, 975 F.2d 802, 806 (11th Cir. 1992) (noting that a party seeking relief under Rule 60(b) based on a court's mistake generally must show "a 'plain misconstruction' of the law and the erroneous application of that law to the facts" (quoting <u>Compton v. Alton Steamship Co.</u>, 608 F.2d 96, 104 (4th Cir. 1979))).

As for Eastpointe's third argument, we do not agree that enforcing the property damage exclusion would render the D&O policy illusory. The fact that Eastpointe's primary responsibilities relate to the operation and maintenance of tangible property does not mean that the property damage exclusion bars coverage for all claims that might be asserted against Eastpointe. The claims at issue here are excluded because they arise out of damage to Bursten's property. But there are other claims that could be asserted against Eastpointe that would not fall within the property damage exclusion and might therefore be covered by the D&O policy. <u>See, e.g.</u>, <u>Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.</u>, 980 F.2d 1402, 1405–06 (11th Cir. 1993) (finding that D&O insurer had duty to defend homeowners' association against claims of slander or disparagement of title, breach of residential development's declaration of covenants and restrictions, and restraint of trade).

### III.

Because Bursten's claims fell within the D&O policy's property damage

exclusion, Travelers had no duty to defend Eastpointe against the claims brought in Bursten's original complaint. Accordingly, the district court's entry of summary judgment in favor of Travelers is **AFFIRMED**.